**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITE COMMUNICATIONS CORP.

Plaintiff,

v.

SOFTLINX, INC.,

Defendant.

C.A. No. __________

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Unite Communications Corporation ("Unite") brings this action seeking damages due to Defendant Softlinx, Inc.'s ("Softlinx") breach of the parties' Software License Agreement (the "License Agreement"), their Maintenance Support Agreement (the "Support Agreement"), and for violation of G.L. c. 93A. Since the beginning of the parties' relationship, Softlinx has failed to remedy extensive technical issues with its software, ReplixFax, including outages, crashes, and failed upgrades. Far from providing the "premium service" for which Unite paid, Softlinx repeatedly evaded its service obligations, often by pointing the finger at Unite, despite Softlinx's knowing that the issues stemmed from its own software.

## THE PARTIES

1. Plaintiff Unite is a Canadian corporation incorporated under the laws of Ontario with its principal place of business at 500 Alden Rd, Suite 203, Markham, ON, Canada.

2. Defendant Softlinx is a corporation incorporated under the laws of Delaware with a principal place of business at 91 Montvale Avenue, Stoneham, MA 02180.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

4. Unite is a citizen of Ontario, Canada.

5. Softlinx is a citizen of Delaware and Massachusetts.

6. Setting aside, for the moment, its claim for triple damages under G.L. c. 93A, Unite has suffered damages in excess of $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Softlinx because it has a principal place of business in Massachusetts, is at home in Massachusetts, and has transacted business in Massachusetts, contracted to supply goods and services in Massachusetts, and derived substantial revenue from goods and services sold in Massachusetts (and this District) which give rise to this action. This action arises out of Softlinx's contacts with Massachusetts (and this District). Softlinx has availed itself of the privilege of doing business in Massachusetts.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Softlinx is a resident of this District and a substantial part of the events, acts, or omissions giving rise to its claims occurred in this District.

9. The allegations contained in the following paragraphs are incorporated herein.

## FACTUAL BACKGROUND

### Unite Licenses Software and Purchases Support from Softlinx

10. Unite is a telecommunications company which offers business phone system solutions, including a secure fax conversion solution. Unite's solution eliminates the need for traditional fax machines, as faxes sent or received by Unite's customers can quickly be sent or received via email or through Unite's secure web fax portal.

11. Softlinx, among other things, licenses software, including "ReplixFax." The ReplixFax software, when hosted by customers like Unite, allows those customers to provide cloud fax services.

12. In or about 2013, Unite and Softlinx began discussions about the licensing of ReplixFax. Unite told Softlinx about its current and potential future requirements to make sure the solution was scalable. On Unite's request, Softlinx provided specs for the hardware to be used with ReplixFax, based on Unite's anticipated growth.

13. Following those discussions, the parties executed a "ReplixFax Software License Agreement" (the "License Agreement"), under which Unite paid Softlinx to license its ReplixFax software. Softlinx also provided Unite with a database as part of the License Agreement.

14. Contemporaneous with the License Agreement, the parties also entered into an annual "premium" maintenance support agreement (the "Maintenance Support Agreement"), under which Unite paid Softlinx to provide support and maintenance for the ReplixFax software.

15. Relying on Softlinx's specs, Unite also purchased hardware that met or exceeded those specs.

16. From 2013 through the present, Unite has renewed its Maintenance Support Agreement with Softlinx annually and has paid the corresponding fees.

17. Under its "premium" Maintenance Support Agreement, Softlinx promised to provide Unite with, among other things:

a. "Bug fixes, patches and enhancements, and all major and minor software upgrades shipped during the term of the maintenance agreement";

b. "Assistance on system installation, configuration and product usage including remote system diagnostics and troubleshooting";

c. "Priority technical support via telephone, fax and/or e-mail during normal business hours, defined as M-F, 8:30 am to 5:30 pm EST. Priority support insurers that calls will be handled live or given priority status in the call back queue"; and

d. "24x7 telephone contact in the event of catastrophic system failure. Catastrophic system failure is defined as an inability to send, receive and/or get status from the ReplixFax System. 24x7 telephone support should not be used for routine operational questions."

18. Further, Softlinx promised to provide support according to a tiered "Service Level Matrix" as follows:

| Severity Level | Description | Performance Requirement |
|---|---|---|
| "Critical" | Product is not usable or functionality cannot be accessed. | 100% of cases will be addressed to provide a temporary fix or workaround to the problem within four (4) business hours of customer logging the call to the Softlinx Help Desk. Softlinx shall thereafter provide a permanent correction as soon as commercially reasonable but not later than five (5) business days after notification. |
| "High" | Product is working but shows incorrect results or functionality flaws. | 100% of cases will be addressed to provide a temporary fix or workaround to the problem as soon as possible but not later than forty-eight (48) hours of customer logging the call to the Softlinx Help Desk. Softlinx shall thereafter provide a permanent correction as soon as commercially reasonable but not later than ten (10) business days after notification. |
| "Low" | Product is working with no functionality flaws, but require enhancements or changes for improved usability or other similar reasons. | 90% of cases will be addressed to diagnose the problem within five (5) business days of customer logging the call to the Softlinx Help Desk. Softlinx shall thereafter provide a permanent correction as soon as commercially reasonable but not later than a subsequent maintenance update of the product. |

19. Generally, the more severe the problem, the greater (and faster) the service Softlinx promised to provide under that Service Level Matrix.

**Unite Complied with the Agreements**

20. Unite complied with its obligations under the License Agreement and Maintenance Support Agreement by paying Softlinx for the software and support services that

Softlinx purported to provide.

21. In total, Unite has paid Softlinx well over one million dollars combined under both the License and Maintenance Support Agreements.

**Softlinx Breaches The Agreements**

22. Softlinx has breached the License Agreement and Maintenance Service Agreement in myriad ways by providing a software plagued by errors and then doing little to fix those errors. The following examples are illustrative.

*Softlinx Failed to Resolve Crashing Issues for Nearly a Decade*

23. Almost immediately, Unite began to experience issues with Softlinx's software and lack of support. Many of these issues have persisted throughout the parties' working relationship.

24. Soon after the relationship began, in or around 2013 or 2014, Unite reported to Softlinx that the ReplixFax software was frequently crashing during normal operation. That crashing issue persisted for approximately ten years without Softlinx providing a resolution.

25. At first, Softlinx's blamed the issue on Unite's hardware, and Softlinx's representatives encouraged Unite to update its hardware to prevent ReplixFax from crashing.

26. Unite promptly followed through with Softlinx's recommendation and updated its hardware.

27. The hardware update had little effect, and ReplixFax still crashed persistently.

28. Next, Softlinx claimed the problem stemmed from the size of Unite's database. Softlinx took no responsibility for the fact that it had provided the very database—which Softlinx selected based on Unite telling Softlinx about its anticipated needs before entering the agreements—that Softlinx now claimed was problematic. Instead, Softlinx suggested that Unite

retain a database "expert" – at Unite's own expense – in order to fix the issue.

29. Unite retained a database expert, who made certain changes to the database, but the expert could not fix the issues with ReplixFax repeatedly crashing.

30. Indeed, the database expert informed Unite that the issues it was experiencing were *not* caused by issues with the database. Instead, the database expert pointed out many issues with the way Softlinx had directed Unite to set up its software on Unite's systems.

31. With the crashing issues still unresolved, Softlinx then blamed Unite's personnel for lacking the requisite skill to resolve the issue and recommended more so-called "experts."

32. Unite retained such experts, but none could resolve the crashing issue.

33. It was not until Softlinx released a "Dual Scheduler" upgrade for its software in approximately April 2023 that some, but not all, of the crashing issues resolved.

34. Instead of pointing the finger at Unite, Softlinx should have released that "upgrade" many years earlier.

35. The size of the database had nothing to do with the issue as, once Softlinx released its "Dual Scheduler" software upgrade, Unite has been able to process far more data on the database.

*Softlinx Blames "Unite's" Database and Refuses to "Log" Errors For Days*

36. In or around October 2019, ReplixFax again crashed.

37. Softlinx immediately blamed "Unite's database" (again, Softlinx provided the database with its software) and refused to further investigate the issue.

38. Unite insisted it was not related to the database because, among other things, Unite had already hired a "database expert", at Softlinx's recommendation but Unite's cost, to attempt to remedy issues with ReplixFax.

39. It took four days for Softlinx to even agree to turn on ReplixFax's diagnostic logs, which was only the first step in diagnosing the software error. As a result, Unite's system was down that entire time.

*Softlinx Unable to Reinstall Its Own Software*

40. In or around March 2023, Unite was required to rebuild its ReplixFax servers as the result of a data center incident. Unite sought Softlinx's support in rebuilding those servers.

41. Softlinx, however, was unable to reinstall its own software, including ReplixFax's Web Interface. Among other things, Softlinx informed Unite that Softlinx had discontinued the version of the Web Interface installed on Unite's server and told Unite that no support was available for that version.

42. Softlinx did not provide any advance notice that this feature would be discontinued. As a result, Unite's customers that relied on, and needed, that feature were left without an immediate alternative.

43. Softlinx left Unite without a solution, forcing Unite to expend significant time and resources to develop a resolution itself.

44. Later, Softlinx told Unite's Senior Systems Administrator, Craig Hastings, who has been with the company for nearly a decade, to replicate Unite's IMG modem gateway licenses to try to resolve the issue. Unite did so, but that did not fix the issue. Unite was again left to solve the problem itself. Softlinx's suggestion (which did not work) resulted in Unite using those additional licenses. Softlinx billed Unite for that increase in licenses and Unite paid that amount.

*Softlinx Blames Unite for ReplixFax's "Tripping" Failures*

45. Throughout the parties' relationship, the ReplixFax software has often failed or

"tripped", meaning that faxes go undelivered and a significant backlog of undelivered faxes accumulates.

46. Softlinx has had no solution for this problem, and instead often blames Unite's network or database.

47. This issue boiled over in or around April 2023 (even after Softlinx had released its "Dual Scheduler" upgrade), when ReplixFax again tripped, failed to deliver faxes, and a backlog accumulated. Rather than fix the software problem, Softlinx suggested—after four days had passed—that Unite's network configuration "stress[ed] the system," and recommended Unite purchase additional servers and dedicate a server to each of the many steps in the ReplixFax fax-to-email conversion process.

48. That recommendation was no solution at all. Unite had already added servers based on Softlinx having previously provided the same recommendations when the same issue arose in the past—to no avail.

49. Unite was again left to resolve the issue itself.

50. Ultimately, a Softlinx engineer admitted that the issue was caused by a flaw in the ReplixFax software, and, after the fact, Softlinx's President, Hikyu Lee, admitted to Unite's President, Brian Presement, that Softlinx "could have done better" to resolve the issue.

*Softlinx Fails to Resolve System Outage*

51. In or around March 2023, as the "Dual Scheduler" upgrade was being incorporated, the ReplixFax software failed causing a system-wide shut down—a Critical (and catastrophic) problem. A Softlinx engineer began investigating the issue, but was unfortunately called away due to a family emergency. Thereafter, Softlinx told Unite that no further support was available. Softlinx did not provide an alternate engineer or any other personnel to handle the

situation. Softlinx left Unite without any resolution, without any support, and with its system being completely shut down. Unite's team had to work through the night to discover the flaw and get the system running again.

*Softlinx Fails to Resolve Issue with So-Called "Upgraded" Software*

52. In or around July 2024, as Unite was in the process of moving data centers, Softlinx insisted that Unite switch to an "upgraded" version of the ReplixFax software. Unite did so.

53. Immediately after it did, the upgrade failed, rendering the software unusable. Only at that point did Unite learn — for the first time — that Softlinx had removed certain features from its software, rendering this upgraded version unusable.

54. When Unite asked Softlinx to help resolve this "Critical"-tier support issue, Softlinx reiterated its longstanding pattern of blaming Unite's database (that Softlinx provided with its software).

55. Softlinx told Unite to implement changes that Unite had already implemented years earlier — and which had not worked — and then once again suggested Unite hire experts, at Unite's expense.

56. Softlinx offered no further support.

57. Unite was once again forced to incur the time and expense of resolving the issue itself, which it did by rolling back Softlinx's software to the prior version. This made clear to Unite that the issues it was experiencing had nothing to do with the database, but rather were the result of Softlinx's so-called "upgraded" software.

*Softlinx Repeatedly Failed to Provide Timely (And in Some Cases, Any) Support*

58. Softlinx has also repeatedly failed to provide timely support for "Critical" service

issues as promised under the Maintenance Support Agreement.

59. Despite Softlinx promising in the Maintenance Support Agreement to address "Critical" issues within four business hours, Softlinx frequently waits four hours to even acknowledge issues raised by Unite.

60. Softlinx does not provide a "temporary fix or workaround" within that timeframe, as required under the Maintenance Support Agreement, and often merely deflects the blame elsewhere.

61. Unite has experienced particularly poor service outside of regular business hours, despite paying for Softlinx's "premium" "24x7 telephone" service. For example, in or around January 2023, Unite sought urgent support for a fax server cluster issue on a Sunday. When Unite called the "24x7" helpline, there was nothing but dead air. It was not until the next day, a Monday, that Softlinx responded, admitting that Softlinx had changed phone numbers without telling Unite.

62. Moreover, Softlinx has altogether ignored several requests for service, including requests to fix issues that arise when ReplixFax operates at certain capacities, requests for updates to the Dialogic and IMG parameters, and requests for changelogs.

*Softlinx Failed to Provide Upgrades*

63. Softlinx has also failed to update its software in violation of the Maintenance Service and License Agreements.

64. Over the course of Unite's ten-plus-year relationship with Softlinx, Softlinx has consistently failed to provide upgrades for problematic components of the ReplixFax software. Such failures include, but are not limited to, Softlinx's failure to upgrade the ReplixFax operating system, and failure to timely inform Unite of key software upgrades.

65. Each time that ReplixFax has failed and Unite has requested support, Unite provided (to the extent Softlinx even provided such support) access to its system in hopes that Softlinx would fix the issues, including information related to Unite's IT infrastructure, configuration, and usage.

66. Despite such access to Unite's information, Softlinx's had failed numerous times to fix issues with ReplixFax.

**Damages**

67. The failure of ReplixFax to function as intended and Softlinx's failure to remedy those errors has damaged Unite in numerous ways.

68. First, Unite has not received the benefit of its bargain, that is, a properly functioning software and a "premium" level of support for that software.

69. Second, Unite has incurred significant costs to resolve problems with ReplixFax.

70. Unite has paid for numerous so-called "experts" at Softlinx's suggestion.

71. Unite has also had to divert personnel and resources away from their core functions to fix these issues. For example, Unite's primary network engineer is routinely forced to dedicate a significant portion of his time to babysit the ReplixFax software and troubleshoot the frequent issues that plague the software. Indeed, on an ongoing and continuing basis, he must vigilantly monitor ReplixFax to ensure it continues to function, which requires him to divert numerous hours each week away from other projects.

72. Unite has also been forced to hire additional personnel to deal with the heavy load of technology issues and customer complaints caused by the ReplixFax software.

73. Third, Softlinx's breaches of the License and Maintenance Support Agreements have caused significant interruptions to Unite's business, as well as the loss of profits. Among

other things, Unite has undercharged customers due to flawed page counts caused by a ReplixFax malfunction, which Softlinx failed, for years, to fix; ReplixFax's persistent errors and/or Softlinx's poor service has caused Unite to fail to timely deliver on its obligations to customers, forcing Unite to refund those customers; and worse, Unite has lost customers due to these issues.

74. Additionally, Unite has had to delay key business projects because its personnel are too preoccupied with troubleshooting ReplixFax, resulting in lost opportunities.

75. Fourth, the ReplixFax issues have significantly damaged Unite's business reputation and hampered its referral business as well.

76. For example, Unite's partners have begun exploring options with competitors due to ReplixFax's persistent errors and/or Softlinx's poor service.

**COUNT I**
**(Breach of the Maintenance Support Agreement)**

77. Unite hereby realleges the allegations contained in the foregoing paragraphs as though fully set forth in this claim for relief.

78. The parties entered a valid, enforceable, and binding Maintenance Support Agreement requiring Softlinx to provide Unite with "premium" maintenance and support for the ReplixFax software.

79. Unite performed its obligations under the agreement, including but not limited to, paying Softlinx for the promised "premium" support.

80. Softlinx breached the agreement in several ways, including but not limited to: (1) pointing the finger at Unite instead of remedying issues with Softlinx's own software; (2) failing to provide timely support; (3) failing to provide any support whatsoever and forcing Unite to divert its own resources and/or enlist third-party support in the place of Softlinx's promised

support; (4) ignoring multiple Unite requests for support; and (5) failing to appropriately update the ReplixFax software.

81. Softlinx did not remedy its breaches within a reasonable time.

82. Given Softlinx's numerous, material, and unremedied breaches, Unite suffered damage, including but not limited to, actual and consequential damages.

**COUNT II**
**(Breach of the License Agreement)**

83. Unite hereby realleges the allegations contained in the foregoing paragraphs as though fully set forth in this claim for relief.

84. The parties entered a valid, enforceable, and binding License Agreement requiring Softlinx to provide functional ReplixFax software.

85. Unite performed its obligations under the agreement, including but not limited to, paying Softlinx a licensing fee for the software.

86. Softlinx breached the agreement in several ways, including: (1) providing a ReplixFax software that frequently fails; and (2) failing to adequately remedy known issues with ReplixFax, including by failing to provide updates that would resolve the issues.

87. Softlinx did not remedy its breaches within a reasonable time.

88. Given Softlinx's numerous, material, and unremedied breaches, Unite suffered damage, including but not limited to, actual damages and consequential damages.

**COUNT III**
**(Breach of the Covenant of Good Faith & Fair Dealing)**

89. Unite hereby realleges the allegations contained in the foregoing paragraphs as though fully set forth in this claim for relief.

90. There is an implied covenant of good faith and fair dealing between the parties

with respect to both the License Agreement and Maintenance Support Agreement. That covenant requires that neither party shall do anything that will have the effect of injuring the right of the other party to the fruits of the contract.

91. The implied covenant of good faith and fair dealing required Softlinx to perform its obligations in good faith and consistent with the justified expectations of Unite.

92. Softlinx has breached the covenant of good faith and fair dealing contained in both the Maintenance Support and License Agreements by, among other things, pointing the finger at Unite's hardware, database, and personnel despite knowing that the issues arose from Softlinx's software.

93. Softlinx did not remedy its breaches within a reasonable time.

94. Given such breach of the implied covenant, United suffered damage, including but not limited to, actual damages and consequential damages.

**COUNT IV**
**(Breach of Express Warranty as to the Maintenance Support Agreement)**

95. Unite hereby realleges the allegations contained in the foregoing paragraphs as though fully set forth in this claim for relief.

96. The parties entered a valid, enforceable, and binding Maintenance Support Agreement.

97. Softlinx expressly warranted, in the Maintenance Support Agreement, that it would provide, among other things,

a. "Bug fixes, patches and enhancements, and all major and minor software upgrades shipped during the term of the maintenance agreement";

b. "Assistance on system installation, configuration and product usage including remote system diagnostics and troubleshooting";

c. "Priority technical support via telephone, fax and/or e-mail during normal

business hours, defined as M-F, 8:30 am to 5:30 pm EST. Priority support insurers that calls will be handled live or given priority status in the call back queue"; and

d. "24x7 telephone contact in the event of catastrophic system failure. Catastrophic system failure is defined as an inability to send, receive and/or get status from the ReplixFax System. 24x7 telephone support should not be used for routine operational questions."

98. Softlinx breached that warranty in several ways, including by: (1) failing to timely provide upgrades; (2) failing to provide reasonable assistance on system installation, configuration, and product usage issues, often forcing Unite resolve issues itself; (3) failing to provide "priority" support, including failing to timely respond to requests for support and/or failing to respond altogether; (4) failing to provide "24x7 telephone contact" including changing its telephone support number without telling Unite.

99. Softlinx also expressly warranted, in the Maintenance Support Agreement, that, for "Critical" cases, "100% will be addressed to provide a temporary fix or workaround to the problem within four (4) business hours of customer logging the call to the Softlinx Help Desk."

100. Softlinx breached that warranty by failing to either fix or provide a workaround to numerous issues within that four-hour window, including but not limited to, the crashing issue which persisted for nearly a decade.

101. Softlinx did not remedy its breaches within a reasonable time.

102. Given Softlinx's numerous, material, and unremedied breaches, Unite suffered damage, including but not limited to, actual damages and consequential damages.

## COUNT V
## (Breach of Express Warranty as to the License Agreement)

103. Unite hereby realleges the allegations contained in the foregoing paragraphs as though fully set forth in this claim for relief.

104. The parties entered a valid, enforceable, and binding License Agreement.

105. Softlinx expressly warranted, in the License Agreement, that its "[s]ervices will be performed by qualified personnel using commercially reasonable efforts and acting in a professional and workmanlike manner."

106. Softlinx breached that warranty in several ways, including by: (1) pointing the finger at Unite instead of remedying issues with Softlinx's own software; (2) failing to provide timely support; (3) failing to provide any support whatsoever and forcing Unite to divert its own resources and/or enlist third-party support in the place of Softlinx's promised support; (4) ignoring multiple Unite requests for support; (5) failing to ensure Softlinx's staff have the requisite knowledge to fix problems with ReplixFax; and (6) failing to assign adequately-trained staff to fix problems with ReplixFax.

107. Softlinx did not remedy its breaches within a reasonable time.

108. Given Softlinx's numerous, material, and unremedied breaches, Unite suffered damage, including but not limited to, actual damages and consequential damages.

**COUNT VI**
**(Violation of G.L. c. 93A, § 11)**

109. Unite hereby realleges the allegations contained in the foregoing paragraphs as though fully set forth in this claim for relief.

110. Unite is engaged in the trade or commerce of providing business phone system solutions.

111. At all relevant times, Softlinx has been engaged in the trade or commerce of providing cloud fax service software and support in the Commonwealth of Massachusetts.

112. Softlinx has engaged in unfair and deceptive practices by, among other things, attempting to skirt its support obligations by pointing the finger at Unite's hardware, database,

and personnel despite knowing that the issues arose from flaws in its software.

113. Softlinx knew that the problems arose from its ReplixFax software because, as soon as Softlinx released a software "upgrade" many of the issues resolved.

114. Softlinx's unfair and deceptive acts and practices damaged Unite by, among other things, diverting personnel and resources away from their core functions to fix these issues; forcing Unite to hire additional personnel to deal with the heavy load of technology issues and customer complaints caused by the ReplixFax software; forcing Unite to hire third-party "experts" to attempt to resolve issues that Softlinx should have fixed; and hamstringing Unite's ability to serve its customers, which has led to the loss of revenue, loss of customers, and reputational harm.

115. Softlinx's unfair and deceptive acts and practices serve no legitimate business purpose.

116. Softlinx's unfair and deceptive acts and practices occurred primarily and substantially in Massachusetts. Among other things, Softlinx directed all actions from its headquarters in Massachusetts.

117. Softlinx's unfair and deceptive acts and practices have been willful, knowing, and intentional, entitling Unite to triple damages and attorneys' fees.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Unite demands a jury trial on all claims herein so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Unite prays for judgment in its favor and against Softlinx, providing the following relief:

A. Enter judgment that Softlinx breached the parties' valid and binding Agreements, breached the implied covenant of good faith and fair dealing, breached expressed warranties; and violated G.L. c. 93A.

B. Award Unite its damages suffered as a result of Softlinx's acts and any other damages that Unite is entitled to by any applicable law;

C. Award Unite treble damages and attorneys' fees pursuant to G.L. c. 93A;

D. Award Unite pre-judgment and post-judgment interest in the maximum amount allowed by law;

E. Award Unite costs incurred in bringing this action; and

F. Award Unite other relief as this Court deems just and proper.

**UNITE COMMUNICATIONS CORP.**

By its attorneys,

/s/ *Michael J. Leard*
Michael J. Leard (BBO # 681468)
mleard@nutter.com
Bryan M. Connor (BBO # 688219)
bconnor@nutter.com
Nutter McClennen & Fish LLP
Seaport West, 155 Seaport Blvd.
Boston, Massachusetts 02210
Telephone: (617) 439-2000
Facsimile: (617) 310-9000

November 25, 2024